## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JAMES VEAL**                                    **CIVIL ACTION**

**VERSUS**                                       **NO.  14-762**

**TIM KEITH, WARDEN**                            **SECTION "R"(2)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    FACTUAL BACKGROUND

The petitioner, James Veal, is a convicted inmate currently incarcerated in the Winn Correctional Center in Winnfield, Louisiana.[2]   On April 13, 2009, Veal was charged by bill of information in Jefferson Parish with two counts of distribution of cocaine.[3]   The Louisiana Fifth Circuit Court of Appeal summarized the facts of the case as determined at trial as follows:

> On September 30, 2008, Deputy John Bowers and Agent Joseph Gueldner, who were working in an undercover narcotics operation, were involved in a drug transaction, which resulted in the purchase $40 worth of crack cocaine from defendant.  At trial, Agent Gueldner testified that he and Deputy Bowers signaled defendant from their vehicle, which was a truck, at the intersection of Glendella Drive and Bishop Drive, in Avondale, and asked him for $40 worth of crack cocaine.  Subsequent to speaking with the officers, defendant jumped in the bed of their truck.  Defendant directed the officers to another location near the intersection of Georgetown Drive and Federal Drive, where Agent Gueldner gave defendant $20 to return with crack cocaine. Defendant returned with $20 worth of narcotics, Agent Gueldner turned over the remaining $20, and defendant again left and later returned with another $20 worth of crack cocaine.  The officers then dropped defendant off at his residence located at 244 Church Street.  Later that day, Agent Gueldner identified defendant in a photographic lineup presented by Detective Brian Rico.
>
> Deputy Bowers testified that he rode as a passenger with Agent Gueldner when he purchased the $40 worth of crack cocaine from defendant on September 30, 2008.  However, he admitted that he only observed the transaction and he did not give anything to or receive anything from defendant. He further testified that defendant referred to himself as "Big Jim."  He also identified defendant in a lineup presented to him by Detective Brian Rico.

_____

[2] Rec. Doc. No. 1.

[3] St. Rec. Vol. 1 of 4, Bill of Information, 4/13/09.

Detective Brian Rico testified that on September 30, 2008, he participated in the narcotics investigation, which involved defendant. He further stated that he and Sergeant Joseph Williams, Sergeant Cory Wilson, and three other agents, Lisa Calpagno, James Matthews, and Williams Burns, established surveillance, which included video and audio, in the area of Glendella Street, "Federal," and "Georgetown," which is in the immediate area of Avondale. He observed and listened to the undercover officers', Gueldner and Bowers, transaction with defendant. The evidence was field tested by Sergeant Bowers and it tested positive for the presence of cocaine. After the transaction was complete and the evidence secured, the videotape and the cocaine were then turned over to Detective Rico.

In addition, Detective Rico testified that he compiled the photographic lineups that were given to Agent Gueldner and Deputy Bowers, separately. He indicated that both Agent Gueldner and Deputy Bowers positively identified defendant in their separate lineups. After receiving a positive identification, Detective Rico obtained a warrant for defendant's arrest.

On November 13, 2008, Agent Gueldner, working alone, purchased another $20 worth of crack cocaine from defendant on Glendella Drive. After defendant returned with the cocaine, he placed it on the hood of the vehicle, and Deputy Gueldner agreed to give defendant a small portion of the narcotics he purchased from defendant; however, he never actually gave defendant any cocaine.

Sergeant Joseph Williams also testified that he supervised the narcotics investigation involving defendant on November 13, 2008. After the transaction was complete, Sergeant Williams took possession of the narcotics and videotape from Agent Gueldner and logged it into evidence in the evidence and property division. In addition, he applied for a second warrant for defendant's arrest in reference to the November 13, 2008, drug transaction.

Daniel Waguespack, an expert in forensic science, testified that he tested two samples (State's Exhibit 3 and 4), and further concluded that the substances were "in fact" cocaine.

Defendant testified that he was in Gateway Rehabilitation Center, at the time he was arrested, because he was having problems with drugs when he was arrested for the two counts of distribution of cocaine. His parole officer sent him there as a condition of his parole. He admitted to numerous drug convictions involving distribution and also a conviction for simple burglary of a car. He also admitted to being an addict to heroin and cocaine since late 1980.

In addition, defendant honestly confessed to distributing the cocaine to Agent Gueldner and Deputy Bowers in order to feed his own addiction. He

3

> also attested that he received drugs as payment.  James Veal, Sr., defendant's
> father, also testified that his son had a drug problem.
>      Darryl Chandler, a certified substance abuse counselor for Gateway
> Recovery System, testified that defendant completed the civilian program and
> was arrested while he was waiting for housing.  Defendant completed 97 days
> of the 100 day program.

State v. Veal, 83 So. 3d 211, 212-13 (La. App. 1st Cir. 2011); State Record Volume 1 of

4, Louisiana Fifth Circuit Court of Appeal Opinion, 11-KA-44, December 28, 2011.

Veal was tried before a jury on September 30 and October 1, 2009, and found

guilty as charged on both counts.[4]  At an October 20, 2009 hearing, the state trial court

denied Veal's motions for a new trial and post-verdict judgment of acquittal.[5]  After

waiver of legal delays, the state trial court sentenced Veal to twenty (20) years in prison

at hard labor on each count to be served concurrently and with the first two years of each

to be served without benefit of parole, probation, or suspension of sentence.[6]

After additional proceedings, Veal entered a guilty plea as a second offender to the

multiple offender bill filed by the State on January 22, 2010.[7]  After waiver of legal

---

[4]St. Rec. Vol. 1 of 4, Trial Minutes, 9/30/09; Trial Minutes, 10/1/09; Jury Verdict, 10/1/09; St. Rec. Vol. 2 of 4, Trial Transcript, 9/30/09; Trial Transcript, 10/1/09.

[5]St. Rec. Vol. 1 of 4, Minute Entry, 10/20/09; Motion for New Trial, 10/8/09; Trial Court Order, 10/8/09; Motion for Post-Verdict Judgment of Acquittal, 10/8/09; Trial Court Order (2), 10/8/09; St. Rec. Vol. 3 of 4, Sentencing Transcript, 10/20/09.

[6]St. Rec. Vol. 1 of 4, Sentencing Minutes, 10/20/09; St. Rec. Vol. 3 of 4, Sentencing Transcript, 10/20/09.

[7]St. Rec. Vol. 1 of 4, Multiple Bill Sentencing Minutes, 1/22/10; Waiver of Rights Plea of Guilty Multiple Offender, 1/22/10; Multiple Bill, 1/22/10; St. Rec. Vol. 3 of 4, Multiple Bill Sentencing Transcript, 1/22/10.  The State filed a prior multiple bill which was ultimately dismissed.  St. Rec. Vol.

delays, the court vacated the original sentence on count one and resentenced Veal to twenty (20) years in prison as a multiple offender with the sentence to be served without benefit of probation or suspension of sentence.[8]

On direct appeal, Veal's appointed counsel argued that it was error for the state trial court to deny the motion challenging the constitutionality of the Louisiana statute allowing for a non-unanimous verdict.[9]  On December 28, 2011, the Louisiana Fifth Circuit found that the claim was not properly raised and declined to consider the merits.[10] On errors patent review, the appellate court noted several inconsistencies in the multiple offender sentencing, which would be self-correcting as a matter of law.  The court therefore affirmed the convictions and sentences.

Veal's convictions became final thirty (30) days later, on January 27, 2012, when he did not seek rehearing or review in the Louisiana Supreme Court.  Butler v. Cain, 533 F.3d 314 (5th Cir. 2008) (citing Roberts v. Cockrell, 319 F.3d 690, 694-95 (5th Cir. 2003) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process)).

---

1 of 4, Multiple Bill, 10/5/09; Multiple Bill Hearing Minutes, 11/20/09; St. Rec. Vol. 3 of 4, Multiple Bill Hearing Transcript, 11/20/09.

[8]St. Rec. Vol. 1 of 4, Multiple Bill Sentencing Minutes, 1/22/10; St. Rec. Vol. 3 of 4, Multiple Bill Sentencing Transcript, 1/22/10.

[9]St. Rec. Vol. 3 of 4, Appeal Brief, 11-KA-0044, 2/8/11.

[10]Veal, 83 So. 3d at 211; St. Rec. Vol. 1 of 4, 5th Cir. Opinion, 11-KA-44, 12/28/11.

5

On March 8, 2012, Veal submitted an application for post-conviction relief to the state trial court, alleging that he was denied effective assistance of counsel when counsel allowed him to testify and failed to urge an entrapment defense.[11] After the State responded, the court denied the application on July 11, 2012, finding the claim without merit under the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984), and related state case law.[12] The court held that counsel did not err because Veal's voluntary testimony at trial and prior drug history foreclosed an entrapment defense. The Louisiana Fifth Circuit denied Veal's subsequent writ application citing similar reasons under Strickland.[13] The Louisiana Supreme Court denied Veal's related writ application without stated reasons on April 5, 2013.[14]

## II.   FEDERAL HABEAS PETITION

On August 28, 2013, the clerk of the United States District Court for the Western District of Louisiana filed Veal's petition for federal habeas corpus relief asserting that

---

[11]St. Rec. Vol. 1 of 4, Uniform Application for Post-Conviction Relief, 3/13/12 (dated 3/8/12).

[12]St. Rec. Vol. 1 of 4, Trial Court Order, 7/11/12; State's Response, 6/1/12; Trial Court Order, 4/6/12.

[13]St. Rec. Vol. 4 of 4, 5th Cir. Order, 12-KH-741, 10/12/12; 5th Cir. Writ Application, 12-KH-741, 10/3/12.

[14]State ex rel. Veal v. State, 110 So.3d 1072 (La. 2013); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2012-KH-2373, 4/5/13; La. S. Ct. Writ Application, 12-KH-2373, 11/2/12 (dated 10/26/12); St. Rec. Vol. 1 of 4, La. S. Ct. Letter, 2012-KH-2373, 11/2/12.

he was denied effective assistance of counsel when his counsel failed to urge an entrapment defense.[15]  The case was transferred to this court on April 4, 2014.[16]

The State filed a response in opposition to Veal's petition, arguing that Veal failed to exhaust state court remedies as to each of his factual claims of ineffective assistance.[17] The State contends that Veal now presents certain contentions in the "Statement of Facts" section of his memorandum that were not included in the briefing to the state courts, rendering his federal petition partially unexhausted.  Alternatively, the State asserts that the exhausted claims are without merit.

III.   <u>GENERAL STANDARDS OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[18] and applies to habeas petitions filed after that date.  <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198 (5th Cir. 1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)).  The AEDPA therefore

---

[15]Rec. Doc. No. 1.

[16]Rec. Doc. No. 5.

[17]Rec. Doc. No. 14.

[18]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

applies to Veal's petition, which, for reasons discussed below, is deemed filed in this court on August 21, 2013.[19]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State has discussed failure to exhaust as a basis for dismissal of Veal's petition.  "The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court."  Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (citing Picard v. Connor, 404 U.S. 270, 275-78 (1971)) (emphasis added).  "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement."  Whitehead, 157 F.3d at 387 (citing Picard, 404 U.S. at 275-78).  "This requirement is not

---

[19]The United States Court of Appeals for the Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Veal's petition was filed by the clerk of the Western District on August 28, 2013.  Pauper status was granted after the case was transferred to this Court.  Rec. Doc. No. 7.  Nevertheless, Veal's signature on the petition is dated August 21, 2013. This is the earliest date appearing in the record on which he could have presented the pleadings to prison officials for mailing to a federal court.

satisfied if the petitioner presents <u>new legal theories</u> or <u>new factual claims</u> in his federal application."  (emphasis added) <u>Id.</u> (citing <u>Nobles</u>, 127 F.3d at 420).

The factual statements referenced by the State as new claims are not actually part of Veal's argument in support of his ineffective assistance of counsel claim.  The statements highlighted by the State in the "Statement of Facts" merely provide backdrop or history concerning his interactions with counsel leading to the alleged ineffective assistance.  Veal's actual legal claim is the same as that presented to the state courts.  In the "Argument" portion of his memorandum, Veal again argues that his counsel failed to urge an entrapment defense despite his request that she do so and allowed him to testify without first instructing him how to conduct himself.  These arguments are almost verbatim repeats of his state court pleadings.

I do not find that Veal has presented unexhausted claims or new theories, and I therefore reject the State's exhaustion defense.  To whatever extent that any of his arguments could be so construed, the court may nevertheless consider the merits of his claims since they do not support relief.  28 U.S.C. § 2254(b)(2).

IV.   <u>STANDARDS OF MERITS REVIEW</u>

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  <u>Nobles</u>, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

9

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from

> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry v. Johnson, 532 U.S. 782, 792-93 (2001);  Hill, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." (citation omitted) White v. Woodall, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing Harrington v. Richter, 562 U.S. 86, __, 131 S. Ct. 770, 787 (2011), and Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" White, 134 S. Ct. at 1706 (quoting Yarborough v. Alvarado, 541 U.S. 652, 666 (2004)).

"'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

11

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

V.      EFFECTIVE ASSISTANCE OF COUNSEL

Veal alleges that his counsel failed to urge an entrapment defense despite his request that she do so.  He also argues that she allowed him to testify at trial after advising against it, without having laid a foundation for an entrapment defense or instructing him how to conduct himself under cross-examination.

Veal asserted this claim on post-conviction review in the state courts.  The state courts held that Veal failed to establish either prong of the Strickland test.  Specifically, both the state trial court and the Louisiana Fifth Circuit found that Veal had no basis to urge an entrapment defense based on his trial testimony and his prior drug related activity.  In addition, the state courts determined that Veal voluntarily chose to testify, and in doing so, opened the door for the prosecution to question him about his prior criminal drug activity.  This activity further confirmed that an entrapment defense was unavailable under the circumstances of his case and that counsel did not act unreasonably in failing to pursue the defense.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010).  Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging the performance of counsel was established by the United States Supreme Court in Strickland, 466 U.S. at 688, relied upon by the state courts, in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice.  Id., 466 U.S. at 697.  The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id., at 687-88.  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id., at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  Kimler, 167 F.3d at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct

13

more likely than not altered the outcome in the case.' . . . But it is not enough under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington, 131 S. Ct. at 792 (Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms,  not whether it deviated from best practices or most common custom."  Harrington, 131 S. Ct. at 788.  The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so.  The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 131 S. Ct. at 788.

Thus, scrutiny of counsel's performance under Section 2254(d) is "doubly deferential."  Cullen v. Pinholster, __ U.S. __, 131 S. Ct. 1388, 1403 (2011) (quoting Knowles, 556 U.S. at 123).  This court must therefore apply the "strong presumption"

that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 690; <u>Moore v. Johnson</u>, 194 F.3d 586, 591 (5th Cir. 1999).

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise by the petitioner. <u>Strickland</u>, 466 U.S. at 689; <u>Geiger v. Cain</u>, 540 F.3d 303, 309 (5th Cir. 2008); <u>Moore</u>, 194 F.3d at 591. In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. <u>Strickland</u>, 466 U.S. at 689; <u>Neal v. Puckett</u>, 286 F.3d at 236-37; <u>Clark v. Johnson</u>, 227 F.3d 273, 282-83 (5th Cir. 2000), <u>cert. denied</u>, 531 U.S. 1167 (2001). Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. <u>Lamb v. Johnson</u>, 179 F.3d 352, 358 (5th Cir. 1999), <u>cert. denied</u>, 528 U.S. 1013 (1999) (citing <u>Rector v. Johnson</u>, 120 F.3d 551, 564 (5th Cir. 1997) and <u>Mann v. Scott</u>, 41 F.3d 968, 983-84 (5th Cir. 1994)).

As a preliminary matter, Veal asserts that his counsel erred in letting him testify at trial after advising against it and without preparing him to testify. The state courts

found on post-conviction review that Veal's decision to testify was knowing and voluntary. The record supports this conclusion.[20]

> THE COURT:
> Ms. Town, do you have something to put on the record?
>
> MS. TOWN:
> Yes, sir, I do. In informed my client that he does not have to testify, because it is the State's prove [sic] in this case, and that if he does testify that any prior convictions may be - - may come out in front of the jury. Mr. Veal is aware of this. I'm putting that on the record.
>
> MR. KINNETT:
> As part of the discovery packet we turned over the rap sheet of Mr. Veal.
>
> MS. TOWN:
> That's correct. We've gone over that, Judge, and you know, that if Mr. Veal does testify it is going to be a voluntary choice on his behalf.
>
> THE COURT:
> Do you understand that Mr. Veal?
>
> THE DEFENDANT:
> Yes, sir.
>
> THE COURT:
> If you do in fact choose to testify, the State will be able to go into your prior convictions. Do you understand that?
>
> THE DEFENDANT:
> Yes, sir.

The transcript reflects that counsel discussed with Veal the ramifications of his choice to testify at trial in some detail. Veal acknowledged his understanding that the

---

[20]St. Rec. Vol. 2 of 4, Trial Transcript, pp. 36-37, 10/1/09.

State could explore his prior criminal activity.  As discussed below, these circumstances foreclosed the entrapment defense under Louisiana law or at least rendered it unsupportable since Veal's predisposition to crime would readily be shown by the State.

I also note that Veal concedes in his own pleadings that his counsel advised him that the entrapment defense was not feasible in light of his prior criminal history, i.e. predisposition to engage in drug distribution.  Veal then testified in great detail about how a drug transaction usually takes place with undercover officers, further demonstrating his understanding and predisposition to engage in drug sales.[21]  He testified based on his experience with his admitted prior conviction for six counts of distribution of cocaine.[22]  This information and testimony were exactly why counsel advised against his testifying at trial.   Veal has not shown that counsel acted unreasonably when it was Veal himself who voluntarily took the stand against her advice.

Veal has not shown that his counsel's failure to urge the entrapment defense was an unreasonable strategic decision.  The United States Fifth Circuit Court of Appeals has outlined the substance of Louisiana law on the defense of entrapment as follows:

> Under Louisiana law, "an entrapment is perpetrated when a law enforcement official or a person acting in cooperation with such an official, for the purpose of obtaining evidence of the commission of an offense, solicits, encourages, or otherwise induces another person to engage in conduct

---

[21]Id., pp. 39-40.

[22]Id., p. 40.

> constituting such offense when he is not then otherwise disposed to do so." <u>State v. Batiste</u>, 363 So.2d 639, 641 (La.1978) (emphasis added). The Louisiana Supreme Court noted that its law is consistent with federal law. <u>Id</u>. "In entrapment cases, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal." <u>State v. Brand</u>, 520 So.2d 114, 117 (La. 1988) (citing <u>Sherman v. United States</u>, 356 U.S. 369 , 78 S. Ct. 819, 2 L. Ed. 2d 848 (1958)). "For entrapment to exist, a defendant must be induced in some way to engage in criminal conduct which he is not otherwise disposed to engage in; an entrapment defense will not lie if the officers or agents have merely furnished a defendant, who is predisposed to commit the crime, the opportunities to do so." <u>State v. Bernard</u>, 441 So.2d 817, 820 (La. Ct. App. 3d Cir. 1983), <u>writ denied</u>, 445 So.2d 439 (La. 1984). <u>See also</u> <u>State v. Wysinger</u>, 479 So.2d 673, 675 (La. Ct. App. 3d Cir. 1985) ("Entrapment exists when the officer instigates the crime: that is, the officer must plan and conceive the crime and the defendant must have perpetrated it only because of the trickery, persuasion, or fraud of the officer.").

<u>Jones v. Jones</u>, 163 F.3d 285, 304 (5th Cir. 1998); <u>see also</u>, <u>State v. Henderson</u>, 58 So.3d 552, 558-59 (La. App. 2d Cir. 2011) (citing <u>Brand</u>, 520 So. 2d at 114).

Veal recognizes that his counsel was well aware of his prior criminal activity and the fact that he was on parole when he was arrested for these offenses. Veal indicates that his counsel advised him that this evidence of predisposition foreclosed an entrapment defense. In addition, the record shows that Veal testified that he agreed to obtain drugs for the undercover officers for several reasons. First, because they were white, he thought he may have met them through his girlfriend, even though he did not recognize them.[23] Second, he wanted to assure that these "caucasians" did not get

---

[23]<u>Id</u>., pp. 42, 44.

cheated with fake cocaine, which was common in that neighborhood.[24]  They also agreed

to "break me off," or give him some of the cocaine he procured for them, as he indicated

was the usual payment for this type of transaction.[25]

Veal's inclination to purchase narcotics for anyone who drove up looking for

drugs clearly displayed his predisposition to engage in narcotic sales.  Even his repeated

references to his "addiction" to cocaine tended to show his predisposition to drug activity

if he knew he could get some for himself in payment for his role in the sale.

For these reasons, Veal's trial testimony undermined any entrapment defense.  He

even responded to questioning that the only "trick" used was that the officers did not tell

him they were undercover police.  "[T]he reasonableness of counsel's actions may be

determined or substantially influenced by the [accused's] own statements or actions."

See Strickland, 466 U.S. at 691.  This record supports counsel's strategic decision to

forego an entrapment defense.

"[T]he Sixth Amendment does not require that counsel do what is impossible or

unethical.  If there is no bona fide defense to the charge, counsel cannot create one and

may disserve the interests of his client by attempting a useless charade."  United States

v. Cronic, 466 U.S. 648, 656 n.19 (1984).  "If the facts adduced at trial point so

---

[24]Id., pp. 42, 44, 50.

[25]Id., p. 43.

overwhelmingly to the defendant's guilt that even the most competent attorney would be unlikely to have obtained an acquittal, then the defendant's ineffective assistance claim must fail." Jones, 163 F.3d at 304 (quoting Green v. Lynaugh, 868 F.2d 176, 177 (5th Cir. 1989)).  Counsel's actions were more than reasonable in this case.

Even if counsel had presented an entrapment defense, Veal's prior drug use and distribution activity together with his willingness to assist drug purchasers in his neighborhood, even those not already known by him, establishes that there was no reasonable probability that entrapment was a viable defense. With no reasonable probability that pursuing the defense would have resulted in a different verdict, Veal has not demonstrated prejudice resulting from counsel's well-founded decision not to pursue the entrapment defense.  See Jones, 163 F.3d at 304-05.

For these reasons, Veal has failed to demonstrate that his counsel acted deficiently, unreasonably or prejudicially under the standards set forth in Strickland.  The denial of relief on this issue was not contrary to or an unreasonable application Supreme Court law.  Veal is not entitled to relief.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Veal's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[26]

New Orleans, Louisiana, this _____21st_____ day of October, 2014.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[26]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.